Eric Borson for Horvitz & Levy representing Petitioner. I'd like to reserve two minutes for rebuttal. Mr. Tse Sio proved to the immigration judge that he was entitled to withholding of removal. He testified about the racism in Honduras. He testified that gang members attacked him on account of his race, insulting him before brutally assaulting him, cutting his neck and almost cutting off his finger. The IJ found that Mr. Tse Sio was credible and found there was a clear probability of persecution on account of his race. But the Board of Immigration Appeals usurped the IJ's role as fact finder. Instead of reviewing the IJ's factual findings for clear error, the BIA engaged in a cramped reading of the Tse Sio's ethnicity. But it's clear from the context that Mr. Tse Sio meant that the insults he suffered from the gang members were racial insults. That is why Mr. Tse Sio believes he was attacked because of racism. And to the extent there is any ambiguity, the BIA was required to resolve it in favor of Mr. Tse Sio under the clear error standard of review. The BIA failed to do so. In fact, the government even conceded in its response that the BIA apply the de novo standard of review to the finding that Mr. Tse Sio was persecuted on account of his race. So where in the BIA's opinion do you think they apply de novo review? How do we, how can we tell that? I know the government seems to be conceding that and I'll ask them questions about that too, but if they weren't conceding it, what would be your argument that they were applying de novo review? Uh, well, the argument is that they, uh, the government essentially made the fact, the finding of fact that Mr. Tse Sio was not insulted on account of his race. Um, and the only way to do that would be to ignore the clear error standard of review and instead apply the de novo standard of review. So, uh, admittedly the government or the BIA did, um, nominally purport to try to say, they use the clear error language, but that's not dispositive under the Rodriguez case that we cited extensively. Uh, this court's required to look at what the BIA actually did, not what the BIA said it did. And in Rodriguez, uh, also the BIA said we are applying the clear error standard of review, but the court read the BIA's opinion and determined what the BIA actually did. Uh, and here we have testimony, um, that goes essentially, uh, what happened to you? Uh, what harm have you suffered on account of race? Uh, I was insulted. Tell me more. Um, I was insulted and then I was attacked. Why? Because of racism derived me. So in that context, uh, where he's being asked questions to tell about the racial harm he suffered, he uses the word insults and then he says, I'm attacked because of racism. The only possible reading of that context is that those insults were racial insults. Someone asked me what harm have I suffered on account of my race? And someone said, and then I responded, they insulted me. The natural inference is not, you know, they insulted me because I was short. The national, the natural inference is they insulted me because of something racial. Uh, and the BIA completely ignored that context. But the CIA says on page three of his opinion, to the extent the immigration judge's contrary determination was premised on a factual finding that the respondent demonstrated that the gang members who attacked him were motivated by race or ethnicity as one central reason for their action, we conclude that this determination was clearly erroneous. So they use the right formulation in answer to, to judge Friedland's question, where in the decision do we see an application of DeNova review as opposed to clearly erroneous review? Uh, it's, it's in the decision, uh, because the only way that the BIA could reach that conclusion is by not applying the clear error standard of review. The conclusion had reached that Mr. Seale was not insulted on account of his race. That's a fact that the BIA was finding, and that's a fact that was not in the IJ's opinion. The IJ didn't actually say that the insults were, were about race, right? There's no actual finding about what the insults were in the IJ's opinion, is there? Uh, the IJ did find that he was assaulted on account of his race, um. But without drawing that link, right? Correct. The only way, but I think it's also clear from the context of the IJ's opinion that the IJ did believe that Mr. Seale was insulted on account of his race. And again, to the extent there's any ambiguity, it was incumbent upon the BIA not to resolve the issue of fact or resolve the ambiguity in the IJ's findings, but to remand back to the IJ for further factual findings. So if it was unclear whether or not these insults were racial insults, it wasn't for the BIA to determine these were not racial insults. It was for the BIA to remand back to the IJ to determine whether or not these were racial insults. And, uh, I sincerely believe that the IJ, if, uh, put to that task again, would say these were racial insults. That's the, the linchpin of the IJ's conclusion. Um, in, in any event, Mr. Seale did testify that he was, uh, that he was persecuted on account of his race. And, um, his testimony that he was persecuted on account of his race, plus a positive credibility finding is enough. Well, but what's the persecution on account of his race other than this incident where we're not quite sure what the insults were? Well, it's, it's this incident. Um, it's also the, uh, the insults he suffered growing up informed the racism that motivated this incident. Uh, his testimony that all the Asians have fled Honduras because of racism, uh, his family's decision to flee Honduras, the lack of any Asians in Honduras, you put that all together, uh, his testimony that he was assaulted on account of his race, um, is, is, uh, is at least supported by the inferences in the record. And the IJ was entitled to make that finding. Um, and the BIA was required to draw all inferences in Mr. Seale's favor. And that's what the BIA didn't do. But so now what is, so we have, what is our standard of review to the BIA though? I mean, maybe we could think like, yeah, it would have been better if the BIA had drawn these inferences, but there isn't any specific finding in the record that the BIA disregarded or if we apply some deference to what the BIA did, then I'm not quite sure how we can say what they did was wrong. Uh, well, like I said, there are two ways to look at it. One is that the only way that the BIA could have reached the conclusion it did is to not apply the clear air standard. Not quite. I think you've got something that might help you. We also concur with the DHS that there is insufficient evidence that Asians or individuals with Asian appearances are targeted. It's not the business of the BIA to find sufficient or insufficient evidence. They're the business on clearer reviews to find that there's clear error in a finding that there was any evidence. There's where you're absolutely right. Oh, um, I'm starting the day. Well, yeah. Uh, I don't want to just repeat your point back to you, but I, I agree with it. Um, the, the evidence about, uh, is there enough here to determine that Asians are discriminated against? And there was, uh, there were enough facts to draw that inference. Um, and the BIA again is not in the position to weigh competing inferences and make a decision on it. You have two minutes. You want to say that? Uh, yes, please. I may appease the court. My name is Andrew O'Malley. I represent the Attorney General of the United States. The courts have denied a petition for review because the board adhered to its regulations and applied the proper standard of review in reversing the immigration judge's grant of withholding of removal. Now the board concluded, specifically concluded on page three of its decision, that the immigration judge's nexus determination, that's whether or not race or ethnicity was one central reason for the harm the petitioner suffered and feared was clearly erroneous. And the record supports that conclusion. Uh, indeed there were two main incidents of harm, uh, that founded or on which petitioner's claim was founded on. That's the attack on his father in the restaurant and that's the attack by gangs when he was 15 years old. To begin with the father, the attack on the father, there is no testimony or evidence in the record to suggest that this attack was on account of race or ethnicity. Petitioner never testified to that fact. The police report, the only other evidence in the record as to that, states that the assailants were unidentified and petitioner's father stated that he had no idea why he was attacked. Yet based on this evidence, the IJ concluded there's no doubt, based on this report, that petitioner's father was targeted on account of his race or ethnicity. There's a logical gap there that is simply not filled by the facts in the case. With respect to the attacks by the gangs. Wait, when you say no doubt, where's the no doubt coming from? Uh, you're on, that's the language of the immigration judge. That's on page 324, page 10 of the IJ's decision where the IJ says, based on this report, we could say that there was some other motive, but there's no doubt here that there's, that this was on account of, of the, of race or ethnicity. So that could be like overstatement, but that, that they don't have to find that there's no doubt of that for them to hold what they held, right? For the IJ to hold that? No, but here there's absolutely no evidence and it shows a logical leap that the IJ made that there's no evidence to fill that gap. And the same holds true for the attack by gangs. Counsel, you said there's no evidence, but isn't there the immutable characteristic of the Asian ethnicity of his father running a business? There is, there is, your honor. But again, petitioners, a petitioner never testified that his father was attacked on his father told the police that he had no idea why he was attacked. And immutable, immutable characteristic goes to particular social group, of course. And, and I'd just like to emphasize that particular social group has, has gone by the wayside. So what you're arguing is there's no evidence in which a rational trier of fact could find that there's a nexus between the attack on the father and racial animus. There's, there's no evidence to suggest that, your honor. There's absolutely no evidence. So the IJ was just making an un-based conclusion. That seems to be the case, your honor. Yes. Cause there's no evidence here. And again, with the attack by the gangs, there's no evidence to suggest that those gangs were motivated as one central reason by petitioner's race or ethnicity. And that's what we're talking about here. Was this one central reason for the attack? Okay. Let's talk about the record as far as the 15 year old, when he was 15 year old. Wasn't the IJ justified in drawing inferences from the evidence in favor of the petitioner on that occasion? But there's no evidence to draw inferences from your honor. There's a testimony that he was insulted as a school child on the schoolyard previously based on his ethnicity. And that's the only evidence we have here. Petitioner's counsel suggests that there's a link between insult and, and ethnicity because of that, which is a separate incident. And we're talking about a separate portion of testimony here. There is no link there. We don't know why he was insulted. We know that he was attacked because he refused to join the gang. We know that he was attacked as the gang members were trying to rob him. And we have testimony from him saying that there's racism in Honduras. There's nothing to support that link. We have nothing to weigh or look at or to consider to determine whether or not race or ethnicity was in fact one central reason, or it was a necessary element of why he was targeted. And that seems to be where the board is going here. In your brief, you said the board applied de novo review. We did, your honor. Are you bound by that? We don't believe so, your honor. And we think it's necessary to look at what the board actually did here. We don't think there's a novo review here. I think the government's brief went a little far on that. There's certainly some sort of legal question as to what constitutes one central reason or nexus, but we think that the determination as to whether that was shown has been consistently held to be factual. We think that's INS v Elias Zacharias. We think matter of NM supports that. So do we have any case that says we should not hold you to what your brief said about what the BIA did? I'm not aware of anything that specifically says that, your honor, but there is, there is, I think the government just went a little bit far there. The government's brief does suggest that the factual determinants were reviewed for, determinations were reviewed for clear error. And I think that's absolutely proper. And without those decisions, then there's no nexus. So I think the government's brief is sufficient in that manner. And if you look at the board's decision, they did exactly that. They applied the clear error standard of review. They said they did. That's totally, what about saying insufficient evidence is not weighing the evidence? Your honor, I'm not seeing where it says insufficient evidence. Take a look at page three, the first paragraph, about 10 lines down. We also concur with the DHS that there is insufficient evidence that Asians or individuals of Asian appearance are targeted by gang members in Honduras. That doesn't sound to me like a clear error finding that there is no evidence from which a rational trier of fact can determine. Your honor, the board's decision is going to the particular social group issue as to whether or not there is social visibility. And that, again, has gone by the wayside. I think the sentences preceding that, where the board says there's no evidence to the record that gang members who attacked ever mentioned his ethnicity or stated his race or ethnicity as a reason for attack, that is simply looking at the record. Those first several sentences are your clear error standard of review as to the gang activity. The rest of it, I believe, goes to the particular social group, which, as petitioner concedes, is no longer an issue here because what we're really talking about is ethnicity. It all merges into one. And I don't believe that the board applied de novo review there in determining that there's no evidence to show that these attacks occurred on the basis of ethnicity. And without those, there's no eligibility for withholding of removal. Now this isn't a case, like some of the other cases in which this court has held, that the board stepped over the grounds of de novo review or improperly applied the clear error standard. The board didn't ignore the IJ's factual findings here. It attacked them head on. The board didn't find facts that were not already found by the immigration judge. The board simply said, there's not evidence here to support these logical leaps that the immigration judge is making. It does seem that the immigration judge may have interpreted insults to mean racial insults. How is that not a reasonable inference? I don't see where that's in the immigration judge's decision. I think where the immigration judge reasoned that the attack was on account of his race was the statement that, well, the gangs must have determined that or must have attacked him on account of his race because if they were going to attack him on account of recruitment, they wouldn't have tried to cut off his fingers. Well, that's a logical leap that makes, with respect to the immigration judge, it makes very little sense. There was also the motive of robbery. There was not the gang recruitment specifically, but the idea that he was attacked because he was refusing their efforts and there's no evidence that suggests that they wouldn't cut off his fingers for that reason or that that was based on race or ethnicity as one central reason for the harm that he suffered. Now because the board adhered to its regulations and properly employed the clear error standard of review, we ask this court to deny the petition for review. There are no other questions, Your Honors. Thank you very much. Thank you. Where is the evidence of ethnicity as to the attack on the father? Your Honor, that's just the general evidence that Honduras is ripe with racism, that the immigration judge was within his power to draw the inference that that attack was based on his race. But again, our case doesn't rise and fall with the attack on the father. The insults that Mr. Seale suffered because he was Asian, the insults he testified to were immediately following a question, what harm did you suffer because of your race? And he answered insults and then attack. Really, it's not just a reasonable inference. It's the only reasonable inference that can be drawn by that. And again, in what, refresh my recollection, in what did the attack consist? Of almost cutting off his finger, cutting his finger nearly to the bone or almost cutting off his finger and also putting a knife up to his neck and cutting his neck. Mr. Seale was able to show the scars of the immigration judge and the immigration judge was able to see the scars and confirm that this was a brutal, vicious assault. But the government takes the position that that evidence goes to his refusal to join the gangs, which we've held to be not a asylum or withholding basis. I ask where's the evidence in the record that refusal to join the gangs was a motivation at all? He didn't testify to that. He testified that the gangs assaulted him because of his race and to rob him. And a central reason doesn't have to be the only reason. And the insults, you know, what more do you want than insults immediately preceding an assault? What can a petitioner do to prove that race was motivating an attack besides, say, I was insulted before I was attacked? So it says respondent, this is the IJ, respondent stated that the gang members attacked him because they were racist and wanted to rob him as well. Moreover, he explained the gang members targeted him because he had been regularly ignoring them. Is the regularly ignoring them not joining them or do you interpret that some other way? That was the immigration judge's gloss. Oh, sorry. And then he did not want to join them. That's the next sentence. So isn't that part of what the motivation was? I think that was the immigration judge's gloss on the facts. But if you look at Mr. Seale's testimony, he gave two reasons. One, racism and two, to rob him. But don't we have to take the IJ's fact findings? Isn't that your overall argument? Yes, we do. But nothing about those fact findings show that race was not at least one central reason for the attack. The immigration judge believed that race was one central reason for the attack. And again, Mr. Seale's testimony that I was attacked because of my race, plus a positive credibility. So he could be credible. He could believe that the attack was because of his race. But you could honestly believe that and be saying that honestly without it being true, right? He doesn't know what the attack was. Yes, in theory, but he was insulted. And that was the basis for his belief. And I think if you read Mr. Seale's testimony in context, he's explaining his belief and he's explaining the basis for his belief. And the rational connection between that is that these insults were racial insults. I didn't hear the government say that if these insults were racial insults, then somehow we win. The government seems to concede that if the IJ could have reasonably concluded that these were racial insults, then we must prevail as a matter of law. So I urge you to... Could I ask you one more question about the concession? Do you have a case that says that we need to hold them to their concession that this was de novo? I don't have a case on me. I would be happy to brief the issue if you think that's just positive. All right. Any further questions? Thank you very much. Thank you for an excellent argument, both of you. And the case of Seale versus Lynch will be marked as submitted.
judges: Rice, Bea, Friedland